(954 P.2d 11)

No. 77,812

ANGELINA REYNOLDS, *Appellant*, v. HIGHLAND MANOR, INC., *Appellee.*

 Opinion filed February 13, 1998. 

*Jerry K. Levy* and *Ronald L. Schneider,* of Lawrence, for the appellant.

*John David Jurcyk* and *Douglas M. Greenwald,* of McAnany, Van Cleave & Phillips, P.A., of Lenexa, for the appellee.

Before PIERRON, P.J., GREEN, J., and GENE B. PENLAND, District Judge Retired, assigned.

PENLAND, J.: Plaintiff, Angelina Reynolds, filed suit for negligent infliction of emotional distress against defendant, Highland Manor, Inc., the owner of a Holiday Inn located in Great Bend. Plaintiff alleged that in May 1995, she accidentally picked up a used condom left in her motel room. Plaintiff claimed that as a result of defendant's negligence, she suffered emotional distress due to her fear of contracting AIDS. The district court granted defendant's motion for summary judgment. We agree with the district court and affirm.

In May 1995, plaintiff and her family checked into the Holiday Inn in Great Bend. Within a few hours of checking in, they requested a room change because the air conditioner in their room was not working, and plaintiff began packing their luggage. As she felt for items left under the bed, her left hand came across what she thought was a candy wrapper. Plaintiff retrieved the item, which turned out to be a condom. She screamed, dropped the prophylactic on the floor, and ran to the bathroom to wash her

hands. She claimed the condom was wet and she felt a "gush" in her hand when she squeezed it. A motel employee heard plaintiff scream and walked into the room at about the time plaintiff dropped the condom to the floor. The employee found a second condom under the bed.

Plaintiff and her husband, Marty, rushed to a local hospital emergency room. They took the two condoms with them, but hospital staff informed them they could not test the contents of the condoms. Plaintiff saw a physician, who examined her hand. At the time of the incident, she had a burn on the middle finger of her left hand and bloody cuticles, but she did not know if the contents of the condom had come into contact with these areas. According to plaintiff, the doctor told her there was nothing he could do if she had already been exposed to any infectious diseases.

Plaintiff submitted to periodic testing for HIV, the virus that causes AIDS, in June 1995, August 1995, November 1995, and June 1996. Each test result was negative. Plaintiff continued to keep the condoms in her freezer at the advice of her attorney, but the condoms and their contents have not been tested.

Months after the incident, plaintiff filed a negligence suit against defendant, claiming she had suffered significant physical and emotional injury due to the negligence of the defendant which caused her to come into contact with a used condom. She also claimed a loss of consortium, seeking $1,000,000 in damages.

The trial court granted defendant's motion for summary judgment on three grounds: (1) Plaintiff failed to demonstrate a physical injury; (2) plaintiff failed to demonstrate a reasonable fear of contracting a disease in the future; and (3) plaintiff failed to demonstrate that she had been exposed to HIV.

This appeal involves a challenge to the district court's grant of summary judgment to the defendants. The Supreme Court discussed the standard of review for motions for summary judgment in *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995):

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Sum-

mary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]"

To sustain a claim for negligent infliction of emotional distress, the plaintiff must establish that the conduct complained of was accompanied by, or resulted in, immediate physical injury. *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, Syl. ¶ 1, 662 P.2d 1214 (1983). A plaintiff "must show that the physical injuries complained of were the direct and proximate result of the emotional distress caused by the [defendant's] alleged negligent conduct. [Citation omitted.] Furthermore, it is a fundamental principle of law that recovery may be had only where it is shown with reasonable certainty that damage was suffered and that such damage resulted from the act or omission of which complaint is made." 233 Kan. at 277. The purpose behind the physical injury requirement is to prevent plaintiffs from recovering for emotional distress that is feigned or counterfeit. *Laughinghouse v. Risser*, 786 F. Supp. 920, 929 (D. Kan. 1992). "Also, emotional distress is a common experience of life and is usually trivial. Therefore, the courts limit recovery to cases involving severe emotional distress which is evidenced and substantiated by actual physical injury." *Freeman v. Kansas State Network Inc.*, 719 F. Supp. 995, 1001 (D. Kan. 1989); see *Hoard*, 233 Kan. at 274.

The district court correctly entered summary judgment for defendant because of plaintiff's failure to demonstrate physical injury. First, plaintiff only offered evidence of general symptoms, which do not amount to physical injury under Kansas law. Second, the evidence failed to establish a direct and proximate connection to the injuries complained of and the conduct alleged.

Plaintiff testified that after the incident, she feared she would die from AIDS. As a result of this anxiety, she claimed to have

suffered headaches, diarrhea, and nausea. She could not say that she ever vomited and conceded that one type of medication she took caused her digestive problems. Plaintiff also testified to crying and shaking, and feeling overwhelmed with stress. Dr. Elias Chediak, the psychiatrist who treated plaintiff following the incident, testified that most of the time he saw her, "she was feeling pretty anxious, crying, feeling distressed," and she reported headaches and tense muscles. Dr. Chediak stated plaintiff had seen a neurologist who performed tests that turned out negative. According to Dr. Chediak, the neurologist concluded that any problems plaintiff had experienced were due to stress. Plaintiff also testified that because of her mental state, her sexual relations with her husband had decreased, but they continued to have unprotected sex after the incident, despite her purported fear she might have HIV.

Physical symptoms of emotional distress such as headaches, insomnia, and general physical upset are insufficient to state a cause of action. *Hopkins v. State*, 237 Kan. 601, 612-13, 702 P.2d 311 (1985); see also *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667 (1988) (Plaintiff suffered shock, emotional pain, feelings of guilt, nightmares, and depression. The court found the symptoms were insufficient to establish physical injury.).

No physical injury appears in the record. During his deposition, Marty Reynolds was asked: "You've told me about her crying, and I think your words were 'she's a basket case and mean, scared, mental midget, upset, out of it.' Have you observed any physical, anything physical about that—those things you described?" Mr. Reynolds responded, "No." When asked, "[h]as she ever complained to you about any physical complaints that she attributes to the incident in May of '95?", Mr. Reynolds responded, "I don't think so." In fact, when asked, "Are you claiming any physical injuries as a result of this incident at the Holiday Inn in Great Bend in May of '95?", the plaintiff responded, "You would have to ask my attorney. Not that I know." The record simply contains no evidence of physical injury sufficient to sustain a claim for negligent infliction of emotional distress.

Plaintiff's claim fails for another reason. She could not demonstrate that her contact with the condom directly and proximately

caused her emotional distress and alleged injuries. Plaintiff testified she had suffered a nervous breakdown in June 1995, which forced her to be hospitalized. She claimed her mental condition did not significantly improve over time. The record reveals, however, the occurrence of several events in plaintiff's life that likely affected her mental condition in combination with, or apart from, the incident in Great Bend. For example, Mr. Reynolds remained jobless throughout 1995 due to a back injury. Also, plaintiff suffered from persistent leg pain resulting from a groin injury. She received treatment for a blood clot in her leg during her June 1995 hospital stay. While she claimed her anxiety over the condom incident prevented her from enjoying her hobbies of gardening and horseback riding, plaintiff admitted she could not engage in these activities because of problems with her leg.

When asked if anything made her condition worsen after her release from the hospital, plaintiff testified to stress caused by her son going to live with his father and distress caused by her mother's illness in 1995, as well as concern over her aunt's heart condition. Plaintiff also testified to having concern about her niece who had been injured in the Oklahoma City bombing, and in October 1995, plaintiff's daughter almost died from carbon monoxide poisoning.

Numerous circumstances could have contributed to plaintiff's purported emotional pain. Dr. Chediak testified that the pain plaintiff suffered could have been caused by a combination of any of the stresses in her life. In *Hoard*, the Supreme Court held that in emotional distress claims, the physical injuries must directly result from the emotional distress caused by the alleged negligence of the defendant. It was not enough, commented the court, that a doctor testified the defendant's actions contributed to physical problems. "Although the appellants' doctor testified that these events 'contributed' to the appellants' physical illnesses, there is no evidence they are the direct, proximate, sole or even major cause of the appellants' problems." 233 Kan. at 279.

Plaintiff relies on three federal cases where sufficient physical injury was demonstrated: *Laughinghouse*, 786 F. Supp. 920; *Payne v. General Motors Corp.*, 731 F. Supp. 1465 (D. Kan. 1990), *aff'd* 943 F.2d 57 (10th Cir. 1991); and *Freeman*, 719 F. Supp. 995.

In those cases, the plaintiffs alleged and offered evidence of significant, severe symptoms of physical injury. The record does not reveal such evidence in this case.

Finally, plaintiff attempts to argue this case could fall under an exception to the physical injury requirement. The only major exception to the physical injury requirement in emotional distress claims is where the plaintiff charges the defendant with acting in a willful or wanton manner, or with the intent to injure. *Hoard*, 233 Kan. at 274. The plaintiff here has made no such allegations, and there is no evidence that the defendant acted intentionally.

While there are no reported "fear of AIDS" or "AIDS phobia" cases in this state, the Supreme Court set out the rule that should apply to such cases in *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 836 P.2d 1102 (1992). In *Tamplin*, our Supreme Court held that a plaintiff may recover for anxiety based on reasonable fear that an existing injury will lead to the occurrence of a disease or condition in the future. For the fear to be reasonable, the court held the plaintiff must show that a substantial probability exists that such condition or disease will occur. 251 Kan. 300, Syl. ¶ 1. Anxiety about a disease or condition developing from a physical injury is not recoverable as an element of mental distress where the medical evidence indicates the chance of such occurring is slight. 251 Kan. 300, Syl. ¶ 2. See *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, 856 P.2d 906 (1993).

The uncontroverted evidence established that plaintiff took an HIV test four times following the incident, the last occurring more than 1 year after the incident. When an individual tests negative for HIV more than 1 year after exposure, a greater than 99% probability exists that HIV will not appear. Plaintiff has failed to establish even a minimal possibility, much less a substantial or even significant probability, that she will contract AIDS due to her contact with the condom in the motel. Because her fear of contracting the disease is unreasonable as a matter of law, she may not recover damages.

To sustain a claim for emotional distress, the plaintiff must show the conduct complained of proximately caused the claimed injuries. In fear of AIDS cases, the plaintiff must show the conduct

proximately caused a fear that the plaintiff might develop AIDS in the future. The question is whether the plaintiff's fear of AIDS is reasonable. To determine whether a plaintiff's fear is reasonable, courts have considered whether the plaintiff can demonstrate exposure to HIV and whether the fear of AIDS is reasonable even in light of an HIV-negative test result.

The clear majority of appellate courts have denied recovery where the plaintiff failed to demonstrate actual exposure to the virus that causes AIDS. For example, in *Neal v. Neal*, 125 Idaho 617, 873 P.2d 871 (1994), a wife sued her husband because she feared that she may have contracted a sexually transmitted disease from her husband after he had an affair. Her claim failed because she could not establish actual exposure. In *Funeral Serv. by Gregory v. Bluefield Hosp.*, 186 W. Va. 424, 413 S.E.2d 79 (1991), *overruled on other grounds Courtney v. Courtney*, 190 W. Va. 126, 437 S.Ed.2d 436 (1993), a mortician who embalmed a corpse infected with AIDS brought suit for emotional distress. The court noted that although the plaintiff undoubtedly came into contact with body fluids during the embalming, there was no evidence of actual exposure. The court held that it would not recognize a suit for fear of contracting AIDS when the plaintiff presented no evidence of actual exposure. 186 W. Va. at 429. In *Carroll v. Sisters of Saint Francis*, 868 S.W.2d 585 (Tenn. 1993), a visitor to a hospital who was pricked by a needle sued the hospital based upon the fear of acquiring AIDS. The court denied the plaintiff's claim for the failure to prove exposure to HIV. In *Brzoska v. Olson*, 668 A.2d 1355, 1357 (Del. 1995), dental patients sued their dentist's estate after discovering he had had AIDS. The court noted that the plaintiffs had failed to demonstrate any physical injury. To examine the reasonableness of the plaintiffs' fear, the court looked at whether the plaintiffs had demonstrated an actual exposure to the virus or a channel of infection. The court found that a plaintiff's fear that he or she might develop AIDS is unreasonable as a matter of law in the absence of actual exposure to HIV.

Only a minority of courts have permitted claims for emotional distress based on fear of acquiring a disease without requiring proof of exposure to the disease.

Plaintiff relies on two New York cases. In *Marchica v. Long Island R. Co.*, 31 F.3d 1197 (2d Cir. 1994), *cert. denied* 513 U.S. 1079 (1995), an employee brought suit under the Federal Employers' Liability Act (FELA) against his employer to recover for his fear of getting AIDS after he was jabbed with a hypodermic needle while on the job. The New York court permitted his claim even though he could not demonstrate actual exposure. The Second Circuit affirmed the New York court's ruling. The court rejected the majority line of cases requiring exposure, finding that the more flexible approach of not requiring exposure was more consistent with the intended remedial purposes of FELA.

Plaintiff also cites *Castro v. New York Life Ins. Co.*, 153 Misc. 2d 1, 588 N.Y.S.2d 695 (1991). In that case, a cleaning worker accidentally pricked his thumb with a needle left in a garbage can. The plaintiff refused to reveal the results of his AIDS test. The court allowed his claim, concluding that any reasonable person stuck by a used needle could develop a fear of contracting AIDS. 153 Misc. 2d at 6. However, another New York court has commented that the *Castro* case should be limited to its facts. *Tischler v. Dimenna*, 160 Misc. 2d 525, 534, 609 N.Y.S.2d 1002 (1994). More recently, a New York appellate court held that to have an actionable claim, a plaintiff who has not tested HIV-positive must show actual exposure, which means proof of transmission and proof that the source of contamination was HIV-positive. *Brown v. New York City Health & Hosp.*, 225 App. Div. 2d 36, 47-48, 648 N.Y.S. 2d 880 (1996).

While a few cases have not required plaintiffs to demonstrate actual exposure to HIV in order to maintain an action based on fear of acquiring AIDS, most jurisdictions have adopted the exposure requirement. Kansas has yet to address such an issue, yet our courts should adopt the majority approach for several reasons. First, as the *Tamplin* case illustrates, Kansas permits recovery for claims based on anxiety of acquiring a disease only when a substantial probability exists that an individual will acquire the disease. Because people who are not exposed to the virus do not acquire AIDS, it seems highly unlikely that an individual can establish a "substantial probability" that he or she will acquire AIDS without

demonstrating exposure to HIV. Second, imposing such a requirement also remains consistent with the federal case of *Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528, 1533 (D. Kan. 1990), in which the court held that in cases where plaintiffs claim personal injury from exposure to toxic substances, the plaintiffs must demonstrate actual exposure to a harmful level of such substances.

Public policy also demands that courts require plaintiffs to meet a strict standard to sustain a fear of contracting AIDS claim. As the Delaware court commented:

"Were we to recognize a claim for the fear of contracting AIDS based upon a mere allegation that one may have been exposed to HIV, totally unsupported by any medical evidence or factual proof, we would open a Pandora's Box of 'AIDS-phobia' claims by individuals whose ignorance, unreasonable suspicion or general paranoia cause them apprehension over the slightest of contact with HIV-infected individuals or objects. Such plaintiffs would recover for their fear of AIDS, no matter how irrational." *Brzoska*, 668 A.2d at 1363.

Kansas courts have imposed the physical injury requirement to prevent plaintiffs from recovering damages for feigned or trivial emotional distress. *Laughinghouse*, 786 F. Supp. at 929; *Freeman*, 719 F. Supp. at 1001; *Hoard*, 233 Kan. at 274. This court would nullify the purpose of that requirement if it allowed plaintiffs to pursue claims based on unreasonable fears that they may acquire a disease to which they have never been exposed or have no evidence of exposure.

Both plaintiff and her husband, in their pretrial depositions, testified they continue to engage regularly in unprotected sex subsequent to the Great Bend incident. This practice seems wholly inconsistent with the plaintiff's alleged fear of contracting AIDS and her loss of consortium claim.

Affirmed.