Docket Nos. 83677, 83886 cons.–Agenda 16–May 1998.

EILEEN MAJCA 
et al
., Appellants, v. STEVEN BEEKIL 
et al
., 
Appellees.–JOHN DOE 
et al
., 
Appellants, v. 

NORTHWESTERN UNIVERSITY 
et al
., Appellees.

Opinion filed October 1, 1998.

JUSTICE MILLER delivered the opinion of the court:

The plaintiffs in these consolidated cases filed complaints in the circuit court of Cook County seeking to recover damages for their fear of contracting acquired immune deficiency syndrome (AIDS). In cause No. 83677, the trial judge granted summary judgment in favor of defendants. In cause No. 83886, the trial judge dismissed plaintiffs' complaint. In each case, the appellate court affirmed. We granted plaintiffs' petitions for leave to appeal (166 Ill. 2d R. 315) and consolidated the cases for the purposes of this appeal. We affirm the judgments of the appellate court.

BACKGROUND

Cause No. 83677

Plaintiff, Eileen Majca, was employed as an office worker by Dr. Jorge Gaffud, a general surgeon with an office in Homewood, Illinois. Eileen's duties included scheduling appointments, cleaning the office, and emptying the waste baskets. Defendant, Dr. Steven Beekil, rented space from Dr. Gaffud and was entitled to use the office for his podiatry practice on Mondays, Wednesdays, and Fridays. In turn, Dr. Beekil allowed Dr. Peter Lacher, whose estate is a defendant, to use the office on Mondays for Dr. Lacher's podiatry practice. In exchange for using the office, Dr. Lacher paid Dr. Beekil 50% of the fees that Dr. Lacher collected from patients he saw at the office.

Eileen stated in her deposition that she emptied the waste baskets before she left the office on Friday, March 1, 1991. On Monday, March 4, 1991, Dr. Lacher saw two patients. Eileen did not know what treatment, if any, the patients received and did not recall the identity of the patients. The following afternoon (Tuesday, March 5, 1991), Eileen again emptied the waste baskets. Eileen was the only person in the office that day because Dr. Gaffud was on vacation.

Dr. Lacher's waste basket was filled with trash. Eileen pressed down on the trash to compact it so that she could grab the plastic liner. As she was withdrawing her hand, Eileen felt a twinge, looked down, and saw that her hand was cut and bleeding. Eileen saw that there was a scalpel in the waste basket. In addition to her own wet blood on the scalpel, Eileen stated that she saw dried blood and a clear, mucus-like substance on the scalpel. The surrounding trash consisted of used tissues, paper towels, scrap paper, and gauze.

After consulting a doctor across the hall, Eileen went to a nearby hospital's emergency room. The cut on her hand required six stitches to close and Eileen was tested for human immunodeficiency virus (HIV). Following treatment, Eileen returned to the office. Eileen cleaned up the blood from her cut and then dumped the trash, including the scalpel, into the dumpster. Eileen's HIV test was negative. Two subsequent HIV tests, performed three and nine months after the incident, were also negative.

Following the incident, Eileen stated that Dr. Lacher did not return to the office for a few months. In retrospect, Eileen believed that Dr. Lacher was suffering from an HIV or AIDS related illness at the time. After a few months, Dr. Lacher returned to the office on at least one occasion. Eileen, however, did not ask Dr. Lacher any questions regarding the presence of the scalpel in the waste basket. It was the custom in the office to always dispose of scalpels and needles in a red “sharps” container. Also, Eileen did not attempt to find out whether Dr. Lacher knew who had used the scalpel or if he knew on whom the scalpel had been used. Dr. Lacher later died of an AIDS-related illness on November 1, 1991.

Eileen and her husband, Michael Majca, filed a four-count amended complaint against Dr. Beekil and the estate of Dr. Lacher. Plaintiffs alleged that Dr. Lacher was either the partner of Dr. Beekil or the actual or apparent agent of Dr. Beekil. Under count I (negligence), count II (ultrahazardous or inherently dangerous activities), and count III (negligent infliction of emotional distress), plaintiffs sought damages for Eileen's medical expenses, the pain and suffering caused by the injury to her hand, and her fear of contracting AIDS as a result of the cut. Under count IV (loss of consortium and society), plaintiffs sought damages for Michael's fear of contracting AIDS through sexual contact with Eileen.

Defendants filed motions for summary judgment. See 735 ILCS 5/2–1005 (West 1994). Both the estate of Dr. Lacher and Dr. Beekil argued that plaintiffs' claim for fear of contracting AIDS must fail because there was no evidence to show that Eileen was actually exposed to HIV or AIDS. Dr. Beekil also argued there was no evidence to support plaintiffs' claim that he was negligent or that he was vicariously liable for the actions of Dr. Lacher.

Plaintiffs responded to defendants' motions and attached the affidavit of Dr. Linda Pifer, a microbiologist with experience in the fields of HIV infection and AIDS. See 735 ILCS 5/2–1005 (West 1994); 145 Ill. 2d R. 191(a). In her affidavit, Dr. Pifer opined that Eileen was exposed to HIV on March 5, 1991, that Eileen was at risk of contracting HIV, and that Eileen's fear of contracting HIV or AIDS was reasonable. In support of these opinions, Dr. Pifer stated that “whether or not HIV can be unequivocally proved to be on the scalpel is beside the point and immaterial to [Eileen's] fear of becoming HIV positive.”

Dr. Beekil filed a motion to strike Dr. Pifer's affidavit because the affidavit failed to satisfy Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)). In part, Rule 191(a) provides that an affidavit in opposition to a motion for summary judgment “shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based *** [and] shall not consist of conclusions but of facts admissible in evidence.”

At a hearing on defendants' motions for summary judgment, the trial judge found that Dr. Pifer's affidavit contained legal conclusions unsupported by a factual basis. The judge struck the affidavit pursuant to Rule 191(a). The judge then granted summary judgment in favor of defendants on plaintiffs' claim for fear of contracting AIDS. The judge relied on 
Doe v. Surgicare of Joliet, Inc.
, 268 Ill. App. 3d 793, 798 (1994), for the proposition that a claim for fear of contracting AIDS requires actual exposure to HIV and a likelihood of developing AIDS in the future. The judge found there was no evidence to demonstrate that Eileen was actually exposed to HIV or that Eileen was likely to develop AIDS in the future.

In addition, the judge found there was no evidence to demonstrate that Dr. Beekil was vicariously liable for the actions of Dr. Lacher or that Dr. Beekil was negligent. Thus, the judge granted summary judgment in favor of Dr. Beekil on plaintiffs' remaining claims. At a later hearing, plaintiffs and the estate of Dr. Lacher informed the judge that they had reached a settlement agreement regarding Eileen's medical expenses and the pain and suffering that resulted from the cut to her hand. The settlement agreement resolved outstanding issues as to the estate of Dr. Lacher.

The appellate court affirmed the judgment of the circuit court. 289 Ill. App. 3d 760. The three-judge panel, however, did not agree on a standard for evaluating plaintiffs' claim for fear of contracting AIDS. Two separate special concurrences were filed with the opinion that contained the judgment of the court.

We granted plaintiffs' petition for leave to appeal and consolidated the case with cause No. 83886. While the appeal was pending here, Dr. Beekil and the estate of Dr. Lacher each filed a motion to strike the references in plaintiffs' brief to the affidavit of Dr. Pifer. Plaintiffs have filed an objection to defendants' motions. We have taken these motions with the case.

Cause No. 83886

In cause No. 83886, the plaintiffs, John Doe, Anita Doe, Bertha Doe, Brian Doe, Carol Doe, and Laurel Doe, each received dental treatment from defendant, Dr. John Noe. At the time of plaintiffs' treatment, Dr. Noe was a dental student providing treatment to patients at Northwestern University's dental clinic. Northwestern University is also a defendant. The Does and Dr. Noe are proceeding under fictitious names pursuant to section 2–401(e) of the Code of Civil Procedure (735 ILCS 5/2–401(e) (West 1992) (“Upon application and for good cause shown the parties may appear under fictitious names”)).

On July 22, 1991, Northwestern sent a letter to plaintiffs and other clinic patients treated by Dr. Noe which stated in part:

“Recently we learned that a dental student involved in providing care to you in the Dental Clinic has tested positive for HIV, the virus that causes Acquired Immune Deficiency Syndrome (AIDS).

We believe, based on the most current and reliable scientific evidence, that the likelihood that you were infected with the HIV virus as a result of contact with this student is extremely low. All persons providing dental care are required to follow precautions designed to prevent the communication of diseases, including HIV. These precautions have been taken. However, 
we strongly recommend that you be tested for the presence of the virus.

The Northwestern University Dental School is offering free testing for HIV.” (Emphasis in original.)

Dr. Noe is the student referred to in the letter.

After plaintiffs' original and two amended complaints were either dismissed or voluntarily withdrawn, plaintiffs filed a third amended complaint containing 12 counts against Northwestern and Dr. Noe. Plaintiffs alleged that at the time of their treatment by Dr. Noe, Dr. Noe was infected with HIV. Count I sought class certification with plaintiffs serving as representatives for the class of all patients who received Northwestern's letter. In counts II through XII, plaintiffs sought damages for their fear of contracting AIDS as a result of receiving dental treatment from Dr. Noe. In addition, plaintiffs sought punitive damages in counts II through VII and in count XII.

Plaintiffs alleged breach of fiduciary duty (counts II, III), intentional infliction of emotional distress (counts IV, V), battery (count VI), common law fraud (count VII), breach of contract (counts VIII, IX), and dental malpractice (counts X, XI). In count XII, plaintiffs alleged consumer fraud. Although the consumer fraud claim was previously dismissed with prejudice (count VII of plaintiffs' first amended complaint), plaintiffs stated that they realleged the claim in the third amended complaint so as not to waive the issue in the event of an appeal.

Defendants filed a motion to dismiss plaintiffs' third amended complaint under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 1992)). Defendants argued that the complaint did not state a cause of action because plaintiffs failed to allege that they were actually exposed to HIV or that they were likely to develop AIDS in the future. See 
Doe v. Surgicare of Joliet, Inc.
, 268 Ill. App. 3d 793, 798 (1994). Defendants also argued that the theories set forth in counts II through XII failed to establish any legal duties that were breached by defendants. In the alternative, defendants filed a motion under section 2–619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2–619(a)(9) (West 1992)) seeking to dismiss certain counts of the third amended complaint because Dr. Noe did not treat any of the named plaintiffs after Dr. Noe learned that he was HIV positive.

The trial judge dismissed plaintiffs' complaint. The judge relied on 
Surgicare
, finding that 
Surgicare
 was in accord with other jurisdictions that have considered claims for fear of contracting AIDS. Under the standard adopted in 
Surgicare
–actual exposure to HIV and a likelihood of developing AIDS in the future–the judge found that plaintiffs failed to plead in any count of their complaint that they were actually exposed to HIV. Alternatively, the judge also dismissed several counts of the complaint because plaintiffs failed to allege a likelihood of contracting AIDS in the future and because Dr. Noe did not treat any of the plaintiffs after he learned that he was HIV positive.

The appellate court affirmed. 289 Ill. App. 3d 39. Although the majority agreed with plaintiffs that actual exposure to HIV is not required to state a claim for fear of contracting AIDS, the court believed that plaintiffs' complaint failed to allege sufficient facts to demonstrate a substantial risk of HIV infection. The special concurrence would have adopted an actual-exposure requirement. See 289 Ill. App. 3d at 51-55 (DiVito, P.J., specially concurring). Both the majority and the special concurrence would have limited damages to the time in which a plaintiff reasonably feared a substantial, medically verifiable possibility of contracting AIDS.

We granted plaintiffs' petition for leave to appeal and consolidated the case with cause No. 83677.

DISCUSSION

Our review of the judge's grant of summary judgment in cause No. 83677 is 
de novo
. 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102 (1992). Summary judgment is proper “where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” 
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 333 (1996). Our review of the judge's dismissal of plaintiffs' third amended complaint in cause No. 83886 is also 
de novo
 (
Vernon v. Schuster
, 179 Ill. 2d 338, 344 (1997)) and we assume the truth of all well-pleaded factual allegations in the complaint (
People ex rel. Daley v. Datacom Systems Corp.
, 146 Ill. 2d 1, 11 (1991)).

Plaintiffs in these consolidated cases argue that they should be able to recover damages for their fear of contracting AIDS for the time period between a possible exposure to HIV and the receipt of reasonably conclusive HIV-negative test results. Although this standard is similar to the one adopted by the appellate court in cause No. 83886, plaintiffs, as appellants in cause No. 83886, argue that the appellate court erred when it found that their complaint alleged insufficient facts to demonstrate a substantial risk of HIV infection. Plaintiffs in both cases contend that actual exposure to HIV should not be a prerequisite to recovery. Plaintiffs claim a jury should determine if an individual's fear of contracting AIDS is reasonable under the particular circumstances of each case, regardless of whether the individual provides proof that he or she has actually been exposed to HIV.

Although plaintiffs acknowledge that their position is in the minority, plaintiffs rely for support on cases in which courts have considered and rejected a requirement of actual exposure to HIV in order to state a claim for fear of contracting AIDS. See 
Williamson v. Waldman
, 150 N.J. 232, 696 A.2d 14 (1997); 
Hartwig v. Oregon Trail Eye Clinic
, 254 Neb. 777, 580 N.W.2d 86 (1998); 
Madrid v. Lincoln County Medical Center
, 122 N.M. 269, 923 P.2d 1154 (N.M. 1996); 
Faya v. Almaraz
, 329 Md. 435, 620 A.2d 327 (Md. 1993); see also 
Marchica v. Long Island R.R. Co.
, 31 F.3d 1197 (2d Cir. 1994) (rejecting actual exposure requirement in Federal Employers' Liability Act cases).

In addition, plaintiffs rely on cases in which courts have not discussed an actual-exposure requirement but have nevertheless allowed a plaintiff to proceed on a claim for fear of contracting AIDS absent evidence of actual exposure to HIV. See 
Howard v. Alexandria Hospital
, 245 Va. 346, 429 S.E.2d 22 (1993); 
Dollar Inn, Inc. v. Slone
, 695 N.E.2d 185 (Ind. App. 1998); 
Bordelon v. St. Frances Cabrini Hospital
, 640 So. 2d 476 (La. App. 1994); 
Castro v. New York Life Insurance Co.
, 153 Misc. 2d 1, 588 N.Y.S.2d 695 (1991).

We note that the persuasive value of 
Bordelon
 and 
Castro
 is open to debate. In 
Stewart v. St. Frances Cabrini Hospital
, 698 So. 2d 1 (La. App. 1997), the court did not follow the lead of 
Bordelon
. Instead, the court stated that “[w]ithout evidence of the presence of an infectious disease and without allegations of a channel for infection, this claim [for fear of HIV infection] becomes one steeped in speculation.” 
Stewart
, 698 So. 2d at 3.

Also, in 
Brown v. New York City Health & Hospitals Corp.
, 225 A.D.2d 36, 648 N.Y.S.2d 880 (1996), the appellate court did not adopt the position of the trial court in 
Castro
. Rather, the court stated that “in order to maintain a cause of action for damages due to the fear of contracting AIDS, a plaintiff who has not tested seropositive must offer proof of 'actual exposure.' ” 
Brown
, 225 A.D.2d at 45, 648 N.Y.S.2d at 886. The court in 
Brown
 noted that its approach was consistent with the results reached in five other New York decisions. See 
Brown
, 225 A.D.2d at 45, 648 N.Y.S.2d at 886.

Defendants argue that plaintiffs' fears of contracting AIDS cannot be reasonable without actual exposure to HIV. Defendants argue that, in the absence of actual exposure to HIV, a claim for fear of contracting AIDS must fail as a matter of law.

In support of their position, defendants rely on cases from jurisdictions that require actual exposure to HIV in order to state a claim for fear of contracting AIDS. The cases relied on by defendants include decisions from courts of last resort in several states: 
Brzoska v. Olson
, 668 A.2d 1355 (Del. 1995); 
K.A.C. v. Benson
, 527 N.W.2d 553 (Minn. 1995); 
Bain v. Wells
, 936 S.W.2d 618 (Tenn. 1997); 
Johnson v. West Virginia University Hospitals, Inc.
, 186 W. Va. 648, 413 S.E.2d 889 (1991); 
Neal v. Neal
, 125 Idaho 617, 873 P.2d 871 (1994) (requiring actual exposure to a sexually transmitted disease including HIV). The cases relied on by defendants also include decisions from intermediate state courts of appeal: 
Kerins v. Hartley
, 27 Cal. App. 4th 1062, 33 Cal. Rptr. 2d 172 (1994); 
Russaw v. Martin
, 221 Ga. App. 683, 472 S.E.2d 508 (1996); 
Reynolds v. Highland Manor, Inc.
, 24 Kan. App. 2d 859, 954 P.2d 11 (1998); 
Pendergist v. Pendergrass
, 961 S.W.2d 919 (Mo. App. 1998); 
Brown v. New York City Health & Hospitals Corp.
, 225 A.D.2d 36, 648 N.Y.S.2d 880 (1996); 
Seimon v. Becton Dickinson & Co.
, 91 Ohio App. 3d 323, 632 N.E.2d 603 (1993); 
Drury v. Baptist Memorial Hospital System
, 933 S.W.2d 668 (Tex. Ct. App. 1996); 
Stewart v. St. Frances Cabrini Hospital
, 698 So. 2d 1 (La. App. 1997) (requiring proof of a “channel for infection”); 
Babich v. Waukesha Memorial Hospital, Inc.
, 205 Wis. 2d 690, 556 N.W.2d 144 (Wis. App. 1996) (requiring proof of a “contaminated source”). In addition, defendants rely on the federal district court's decision in 
Burk v. Sage Products, Inc.
, 747 F. Supp. 285 (E.D. Pa. 1990) (applying Pennsylvania law, the court required actual exposure to HIV to state a claim for fear of contracting AIDS).

Thus, a majority of the courts that have considered claims for fear of contracting AIDS have required a showing of actual exposure to HIV. Comment, 
Emotional Distress Damages for Fear of Contracting AIDS: Should Plaintiffs Have to Show Exposure to HIV?
, 99 Dickinson L. Rev. 779, 794 (1995); Note, 
Can HIV-

Negative Plaintiffs Recover Emotional Distress Damages for Their Fear of AIDS?
, 62 Fordham L. Rev. 225, 237-39 (1993).

Further, by way of analogy, defendants rely on cases in which courts have addressed an individual's fear of contracting a future illness. The future illness is often cancer. In order to recognize a claim for fear of contracting a future illness, the courts in these cases have required actual exposure to a harmful agent. See 
Potter v. Firestone Tire & Rubber Co.
, 6 Cal. 4th 965, 863 P.2d 795, 25 Cal. Rptr. 2d 550 (1993) (a plaintiff must show actual exposure to a toxic substance and that it is more likely than not cancer will develop); 
Urman v. South Boston Savings Bank
, 424 Mass. 165, 674 N.E.2d 1078 (1997) (without evidence of actual exposure to trichloroethylene, summary judgment against plaintiffs was proper); 
Leaf River Forest Products v. Ferguson
, 662 So. 2d 648 (Miss. 1995) (without evidence of actual exposure to dioxin, plaintiffs failed to prove their claim); see also 
Simmons v. Pacor, Inc.
, 543 Pa. 664, 674 A.2d 232 (1996) (although plaintiffs demonstrated actual exposure to asbestos, they did not demonstrate an accompanying physical injury). Like a claim for fear of contracting a future illness, defendants argue that a claim for fear of contracting AIDS must include a showing of actual exposure to the harmful agent–HIV.

We agree with defendants. Without proof of actual exposure to HIV, a claim for fear of contracting AIDS is too speculative to be legally cognizable. Simply put, “[i]t is unreasonable for a person to fear infection when that person has not been exposed to a disease.” 
Brzoska
, 668 A.2d at 1363. We believe that a requirement of actual exposure to HIV distinguishes claims based on conjecture and speculation from those that are based on a genuine fear of contracting AIDS.

Several reasons support an actual-exposure requirement. Because HIV is the cause of AIDS, a person will not develop AIDS without having been exposed to HIV. A person may be exposed to HIV when that person's bodily fluids, nonintact skin, or mucous membranes come in contact with HIV-infected blood, blood components or products, semen, vaginal fluids, or breast milk. See 
Brzoska
, 668 A.2d at 1357 n.1, 1361; 
Faya
, 329 Md. at 445, 620 A.2d at 331-32; 
K.A.C.
, 527 N.W.2d at 558-59; 
Bain
, 936 S.W.2d at 625 n.5. As medical research uncovers more information regarding the transmission of HIV, an actual-exposure requirement will take these developments into account while limiting claims based on unsupported modes of exposure.

In addition, an actual-exposure requirement prevents an individual from recovering damages for fear of contracting AIDS when that fear is based on a lack of information or inaccurate information regarding the transmission of HIV. See 
Brzoska
, 668 A.2d at 1363; 
K.A.C.
, 527 N.W.2d at 559-60; 
Williamson
, 150 N.J. at 244, 696 A.2d at 19-20; 
Bain
, 936 S.W.2d at 625 (Tenn. 1997); 99 Dickinson L. Rev. at 801-04; 62 Fordham L. Rev. at 251. Thus, the public is not discouraged from allaying its concerns regarding the spread of HIV in order to capitalize on unfounded fears of contracting AIDS.

Furthermore, a requirement of actual exposure is an objective standard by which to evaluate claims for fear of contracting AIDS. An objective standard helps to ensure stability, consistency, and predictability in the disposition of these claims. See 
K.A.C.
, 527 N.W.2d at 559; 
Pendergist
, 961 S.W.2d at 926; 99 Dickinson L. Rev. at 803-04.

Accordingly, we examine plaintiffs' claims for fear of contracting AIDS in light of plaintiffs' actual exposure to HIV. In cause No. 83677, Eileen Majca cut her hand on a scalpel found in a waste basket. Plaintiffs' amended complaint alleged that the scalpel which injured Eileen “was exposed to the AIDS virus, or alternatively, active H.I.V., by virtue of being wielded by DR. PETER LACHER at a time when he had full blown AIDS, or active H.I.V. from which he subsequently died.” Plaintiffs did not allege that the dried blood or clear, mucus-like substance observed on the scalpel by Eileen was actually infected with HIV.

A review of the evidence in a light most favorable to plaintiffs fails to demonstrate that either of the substances observed on the scalpel was infected with HIV. Because Eileen disposed of the scalpel, the scalpel was not available for examination. Also, there is no evidence in the record from the three individuals who likely had information regarding the scalpel–Dr. Lacher, who is deceased, and his two unidentified patients. Based on evidence in the record, the likely inference to be drawn is that Dr. Lacher used the scalpel on one of the two patients that were seen on Monday, March 4, 1991.

At most, plaintiffs have established that Eileen cut her hand on a scalpel that may have been used by an HIV-infected podiatrist. Plaintiffs, however, have presented no evidence that Eileen was actually exposed to HIV. With no evidence of actual exposure, summary judgment was properly granted in favor of defendants on plaintiffs' claim for fear of contracting AIDS.

In cause No. 83886, plaintiffs alleged in their third amended complaint that Dr. Noe was infected with HIV at the time he provided dental treatment to plaintiffs. On a motion to dismiss, we accept this allegation as true. Plaintiffs, however, did not allege that they were actually exposed to HIV in any of the 12 counts contained in their complaint. For example, it was never alleged that: Dr. Noe bled into a plaintiff's mouth by accidentally cutting himself during a dental procedure; Dr. Noe pricked himself with a needle prior to using the needle on a plaintiff; or Dr. Noe otherwise exposed a plaintiff to HIV. Without an allegation of actual exposure to HIV, plaintiffs have failed to state a cause of action for fear of contracting AIDS and dismissal under section 2–615 was proper.

In addition, defendants argue that plaintiffs' claims for fear of contracting AIDS fail because plaintiffs have not demonstrated a likelihood of developing AIDS in the future. Defendants explain that even if an individual is actually exposed to HIV, infection does not often result. If, however, actual exposure does result in HIV infection, an individual will test positive for HIV within six months of exposure approximately 99% of the time. Therefore, if an individual tests negative for HIV more than six months after an actual exposure incident, the individual is not likely to develop AIDS in the future as a result of that particular exposure incident. See 
Brzoska
, 668 A.2d at 1359 n.3; 
Faya
, 329 Md. at 446 & n.4, 620 A.2d at 332 & n.4; 
K.A.C.
, 527 N.W.2d at 557 n.5. Accordingly, because plaintiffs here have not demonstrated that they are likely to develop AIDS in the future, defendants argue that plaintiffs' claims for fear of contracting AIDS must fail.

We find defendants' argument unpersuasive. We have already found that once an individual is actually exposed to HIV, a genuine fear of contracting AIDS may exist. The subsequent receipt of HIV-

negative test results cannot erase an individual's genuine fear of contracting AIDS during the period between actual exposure and the eventual receipt of HIV-negative test results more than six months later. In fact, defendants' recitation of the current status of medical research emphasizes that there exists a period of time in which the exposed individual will simply not know what the future may hold. This interim period, sometimes referred to as the “window of anxiety,” is when an individual's fear of contracting AIDS may be reasonable. See 
Bain
, 936 S.W.2d at 624; 
Williamson
, 150 N.J. at 250, 696 A.2d at 23. We therefore believe that an individual need not demonstrate a likelihood of developing AIDS in the future in order to state a claim for fear of contracting AIDS. Once in receipt of reliable HIV-negative test results, however, an individual's fear of contracting AIDS would no longer be reasonable.

Because of our holding regarding plaintiffs' claims for fear of contracting AIDS, it is unnecessary to address the other issues raised by plaintiffs in this appeal. As a final matter, however, we must dispose of defendants' motions to strike the references to Dr. Pifer's affidavit contained in plaintiffs' brief in cause No. 83677. Dr. Pifer's affidavit was attached to plaintiffs' response to defendants' motions for summary judgment. The trial judge struck Dr. Pifer's affidavit because the affidavit contained legal conclusions unsupported by facts.

A review of the affidavit reveals that it contains Dr. Pifer's opinions and conclusions instead of facts admissible in evidence as required by Rule 191(a). In the affidavit, Dr. Pifer opines that Eileen was exposed to HIV, that Eileen was at risk of contracting HIV, and that Eileen's fear of contracting AIDS was reasonable. Facts demonstrating Eileen's actual exposure to HIV, however, are not set forth in the affidavit. Moreover, Dr. Pifer's conclusions assume that the presence of HIV on the scalpel “is beside the point and immaterial” to Eileen's fear of contracting AIDS. We believe that the trial judge properly struck Dr. Pifer's affidavit and therefore grant defendants' motions to strike the references to Dr. Pifer's affidavit contained in plaintiffs' brief.

CONCLUSION

For the foregoing reasons, we affirm the appellate court's judgment in cause No. 83677, which affirmed the trial judge's grant of summary judgment in favor of defendants. Also, we affirm the appellate court's judgment in cause No. 83886, which affirmed the trial judge's dismissal of plaintiffs' complaint.

Appellate court judgments affirmed
.

JUSTICE McMORROW took no part in the consideration or decision of this case.