MAXWELL, J.,
for the Court:
¶ 1. Kathy Lee alleges she pricked her finger on a used hypodermic needle while reaching into the pocket of her employee uniform — a uniform recently supplied by G & K Services, Co. (G & K). Lee sued G & K to recover expenses she had incurred in testing for whether she had contracted a disease. She also sought emotional-distress damages for her six-month “window of anxiety” while she awaited test results.
¶ 2. Mississippi does not recognize fear of disease as an actionable injury absent substantial proof of exposure to a disease. Because Lee could not show her fear of contracting a disease was based on actual exposure to a disease, we must affirm the grant of summary judgment in G & K’s favor on Lee’s emotional-distress claim. But we reverse the grant of summary judgment to G & K on Lee’s medical-expense claim, because Lee presented expert testimony that testing for disease is part of standard treatment for a needle stick when the original user is unknown. We remand this case to the circuit court solely on Lee’s claim for medical expenses.
FACTS AND PROCEDURAL HISTORY
¶ 3. G & K provides employee uniforms to various entities, including Lee’s employer, Copiah-Lincoln Community College (Co-Lin). On March 5, 2008, Tim Malone, a G & K representative, delivered uniforms to Co-Lin. Among those uniforms were two jackets for Lee, a Co-Lin maintenance employee.
¶4. Lee claims she placed her hand in the left pocket of one of the jackets and pricked her finger on a used hypodermic needle. Lee alleges she found three used needles and syringes in the jacket’s pocket. Lee took the needles to a doctor and, from March 2008 through September 2008, underwent testing for various diseases, including AIDS and hepatitis. All tests came back negative.
¶ 5. Lee filed suit against G & K on December 31, 2008, alleging negligence and res ipsa loquitur. Lee sought recovery for her medical bills, totaling approximately $700, and for six months of emotional distress due to her alleged fear of contracting a disease, requesting $10,000 per month. G & K filed a motion for summary judgment, arguing Lee had offered no evidence she was actually exposed to the disease and, thus, could not prove she was injured. Lee move for additional time to respond and further discovery.
¶ 6. At a November 16, 2009 hearing, the circuit court decided to hold G & K’s motion for summary judgment in abeyance to allow Lee time to conduct further discovery. Soon after, the parties jointly submitted the syringes and needle for testing by Douglas Crawford, a chemist at the Mississippi State University Chemistry Laboratory. Crawford provided the parties the results of the testing in January 2010, reaching the following conclusions:
*492 (1) the syringes are designed for one-time insulin injections and are supposed to be discarded after use; (2) the reddish-brown substance in one of the syringes was dried blood; and (3) the blood did not indicate the presence of any illicit drugs or toxins. Crawford further expressed the futility of testing for HIV or hepatitis at that point, as the needle should have been tested within days or weeks of exposure and any disease-causing agents were no longer present. Lastly, Crawford confirmed Lee was no longer at risk for contracting a disease and had not been since six months after the needle stick.
¶ 7. On March 3, 2010, G & K renewed its motion for summary judgment due to Lee’s failure to provide sufficient evidence of a compensable claim of emotional distress based on fear of disease. Lee responded to the motion, attaching an affidavit from Dr. Joel Nitzkin. Dr. Nitzkin, a public health physician, described the proper testing protocol following a needle stick. Dr. Nitzkin explained: (1) if the original user and needle-stick victim are both known and the exposure occurs within hours to a few days of the initial contamination, the blood of both is tested; but (2) if the original needle user is not known, the victim’s blood is tested during the six months following exposure. “Either way,” Dr. Nitzkin attested, “the needle itself is never submitted for laboratory analysis” because:
Testing a needle for the presence of such viruses, even in a research setting, would not conclusively confirm or rule out exposure. The needle could test “negative” because the virus died before or after exposure. [And a] “positive” test on material found in or on the hypodermic needle would not confirm that exposure sufficient to transmit illness has occurred.
In Dr. Nitzkin’s opinion, the “protocol of testing the victim for symptoms is the only method to conclusively determine exposure.
¶ 8. At the conclusion of the May 19, 2010 hearing, the circuit court, relying on Leaf River Forest Products, Inc. v. Ferguson, 662 So.2d 648 (Miss.1995) and South Central Regional Medical Center v. Pickering, 749 So.2d 95 (Miss.1999), held “exposure must be proved either by the presence of a substance on the offending instrument, proof that at some time there was such a substance — for instance, that the instrument had previously been used on a person with a disease — or, third, obviously disease in the plaintiff that can be tied back to the instrument.” The circuit judge found “[n]one of those are present here.... [A]bsent proof of exposure, plaintiff is not entitled to recover on a fear of illness claim.” The court granted G & K’s motion for summary judgment and dismissed Lee’s claims with prejudice.
¶ 9. Lee timely appealed.
STANDARD OF REVIEW
¶ 10. Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). ■ “Summary judgment must be granted when the nonmoving party ‘fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial.’ ” Kitchens v. Dirtworks, Inc., 50 So.3d 388, 389 (¶ 4) (Miss.Ct.App.2010) (quoting Borne v. Dunlop Tire Corp., 12 So.3d 565, 570 (1116) (Miss.Ct.App.2009)).
¶ 11. “We conduct a de novo review of a trial court’s grant or denial of a motion for *493 summary judgment.” Id. at (¶ 3) (citing Lewallen v. Slawson, 822 So.2d 236, 237 (¶ 6) (Miss.2002)). In deciding whether summary judgment was proper, we view the facts in the light most favorable to the nonmovant. Id. (citation omitted).
DISCUSSION
¶ 12. “To prevail on a negligence claim, a plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury.” Paz v. Brush Engineered Materials, Inc., 949 So.2d 1, 3 (¶ 5) (Miss.2007) (Paz I) (quoting Miss. Dep’t of Mental Health v. Hall, 936 So.2d 917, 922 (¶ 7) (Miss.2006)). This appeal solely concerns the element of injury. We must decide whether Lee’s fear of contracting a disease from the needle stick — in the absence of proof that the needle exposed Lee to any diseases — is a legally cognizable “injury” such that Lee can potentially recover for the “window of anxiety” between the needle stick and the final negative test results.
¶ 13. Lee argues that inherent in every needle-stick case is a “window of anxiety” between the stick and conclusive test results six months later, which the Mississippi Supreme Court acknowledged in Pickering as a compensable emotional-distress injury. Alternatively, Lee asserts she was physically injured by the needle stick and is entitled to emotional-distress damages tied to her injury. Because part of the protocol following a needle stick is to test for diseases for six months, she claims she should be allowed to also pursue her claim for the emotional distress of waiting for the results of the tests.
¶ 14. According to the supreme court in Pickering and Ferguson, the “window of anxiety” must result from actual exposure to be an actionable injury. And Lee did not present substantial evidence of actual exposure. Though Lee can potentially recover her medical expenses incurred in testing for disease after the physical injury of the needle stick, she cannot recover corresponding emotional-distress damages without proving actual exposure to diseases was part of the physical injury.
I. Emotional Distress Based on Fear of Disease
¶ 15. “Injury” is not synonymous with “harm.” An “injury” is “the invasion of any legally protected interest of another,” while “harm” is “the existence of loss or detriment in fact of any kind to a person resulting from any cause.” Paz v. Brush Engineered Materials, Inc., 555 F.3d 383, 398 (5th Cir.2009) (Paz II) (quoting Restatement (Second) of Torts § 7(l)-(2) (1965)). “[H]arm, like injury, is not necessarily actionable” and “gives rise to a cause of action only when it results from the invasion of a legally protected interest, which is to say an injury.” Id. at 399 (quoting Restatement (Second) of Torts § 7 cmt. d).
¶ 16. Lee’s alleged injury is not that she was exposed to a disease but that she feared she was exposed to a disease — and that her fear was a reasonable, foreseeable result of the needle stick. See Burk v. Sage Prods., Inc., 747 F.Supp. 285, 288 (E.D.Pa.1990) (finding “[pjlaintiff ... has alleged no injury which arises out of his exposure to the AIDS virus[, but rjather, plaintiffs only injuries stem from his fear that he has been exposed to the disease”). We are certainly sensitive to Lee’s allegations that she was harmed — that she feared the needle stick exposed her to diseases like AIDS or hepatitis. But we are bound by the supreme court’s delineation between an actionable versus an un-actionable claim for emotional distress based on fear of disease. The supreme court has held “emotional distress based *494 on the fear of a future illness must await a manifestation of that illness or be supported by substantial exposure to the danger[.]” Ferguson, 662 So.2d at 650 (also requiring “medical or scientific evidence so that there is a rational basis for the emotional fear”). Because Lee did not present substantial evidence of exposure to a disease, we find the circuit court properly dismissed her window-of-anxiety claim. Id.
A. Requirement of Actual Exposure
¶ 17. In “garden variety negligence” cases, such as Lee’s, some type of injury must be proven. Ferguson, 662 So.2d at 658; see Paz I, 949 So.2d at 5 (¶¶ 13-16) (refusing to recognize a cause of action for medical monitoring based on increase risk of disease because the plaintiff would not have to prove an injury to recover).
¶ 18. In Ferguson, the Mississippi Supreme Court considered whether fear of cancer based on exposure to dioxin was a cognizable injury. Ferguson, 662 So.2d at 657-58. The supreme court noted it “has never allowed or affirmed a claim of emotional distress based on a fear of contracting a disease or illness in the future, however reasonable.” Id. at 658. While acknowledging “the Court may someday recognize the tort of infliction of emotional distress based on fear of future disease,” id. at 659, the supreme court reversed the plaintiffs’ emotional-distress award based on fear of contracting a disease because it found “a lack of evidence proving exposure ... to a dangerous or harmful agent[.]” Id. at 658. It held “if one is to recover for emotional distress predicated on potential future illness there must be substantial proof of exposure and medical evidence that would indicate possible future illness.” Id.
¶ 19. Four years later, in a fear-of-AIDS case, the supreme court considered Ferguson’s requirement of substantial proof of exposure and found “it is logical that the standard in Ferguson ... would apply[.]” Pickering, 749 So.2d at 99 (¶ 10). The supreme court considered how other jurisdictions had approached fear-of-AIDS cases. Id. at 99-101 (¶¶ 11-15). It recognized the majority approach required proof of actual exposure to HIV, while the minority view did not mandate actual exposure to maintain a claim based on fear of AIDS. Id. at 100-01 (¶¶ 14-15). The supreme court stated twice in Pickering that it was not overruling Ferguson’s actual-exposure requirement, impliedly categorizing Mississippi as one of the majority of jurisdictions that require proof of actual exposure to HIV to recover for fear of contracting AIDS. Id. at 102 (¶¶ 17, 19).
¶ 20. In Pickering, a hospital nurse attempted to draw blood from Jimmie Pickering with a lancet that had already been used on another patient. Realizing her mistake, the nurse immediately threw the used lancet away. The supreme court found throwing away the lancet “allowed or caused the best evidence to be destroyed, despite the fact that the defendant had notice that a material, factual issue existed regarding that evidence, thereby resulting in the plaintiffs being denied an opportunity to test it[.]” Id. at 102 (¶ 17). The supreme court held a re-buttable presumption of actual exposure arose. Id. But it expressly limited the presumption to the hospital’s actions following the lancet prick. The supreme court emphasized:
Of course where the defendant did not know or have reason to know that the evidence which it discarded was in question and where it was disposed of during the course of usual medical practice, a rebuttable presumption in favor of the plaintiff would not arise. The plaintiff *495 would retain the burden of proving actual exposure.

Id.

B. “Window of Anxiety”
¶ 21. In remanding Pickering’s emotional-distress claim, the supreme court limited her potential recovery, based on the rebuttable presumption of exposure, to her “window of anxiety” — “the time between when Pickering learned of the possible exposure and the receipt of conclusive HIV negative results.” Id. at 103 (¶ 20); see also id. at 101 (¶ 15) (discussing the “window of anxiety” approach followed in Madrid v. Lincoln County Medical Center, 122 N.M. 269, 923 P.2d 1154, 1162 (1996)).
¶22. Lee argues, based on Pickering, the window of anxiety is an exception to the actual exposure requirement. Lee asserts Pickering erroneously presumed, but for the hospital’s throwing the lancet away, the lancet could have been tested to resolve the question of Pickering’s exposure. But here, Lee’s expert opined there was no way to test the used hypodermic needle for conclusive evidence of exposure or non-exposure.
¶ 23. Lee urges that, as a matter of public policy, we declare that fear of disease during the window of anxiety is recoverable in all needle-stick cases because of the inability to prove actual exposure through testing the needle. However, this court, as an intermediate appellate court, is bound by supreme court precedent. And the supreme court in Pickering expressly stated it did not overrule its holding in Ferguson that proof of actual exposure is required. Pickering, 749 So.2d at 102 (¶ 19). In granting Pickering a rebut-table presumption of actual exposure, the supreme court “simply offer[ed] a way for the plaintiff to recover damages brought about by the defendant’s negligence that would otherwise not be recoverable because of the defendant’s subsequent act of blocking the plaintiffs path to a successful case by destroying or disposing of a key element in the plaintiffs case.” Id. Here, Lee does not argue G & K’s actions blocked her path to proving actual exposure by destroying evidence.
¶ 24. Because the limited circumstance described in Pickering is not present, we find the rebuttable presumption of exposure is not applicable. See id. at 102 (¶ 17). Even if the supreme court in Pickering did presume, but for the hospital’s actions, Pickering would have had a way to prove exposure, see id. at 103 (¶ 19), it is not for this court to say that, without this presumption, the supreme court would have overruled Ferguson and removed the plaintiffs burden of showing substantial proof of exposure to recover for emotional distress based on fear of disease. See Ferguson, 662 So.2d at 658.
¶ 25. This notion is solidified when considered in light of the supreme court’s more recent decision in Paz I. In Paz I, the supreme court answered the question, certified by the United States Court of Appeals for the Fifth Circuit, does Mississippi recognize as a cause of action a medical monitoring claim based on an increased risk of future disease. The supreme court responded with a definite “no.” Paz I, 949 So.2d at 3-6 (¶¶ 5-16). Actual exposure was not at issue because the plaintiffs had presented evidence of exposure to beryllium. The question was the existence of a resulting injury. Id. The plaintiffs sought compensation for medical monitoring due to an increased risk of future disease based on their actual exposure:
Though plaintiffs analogize emotional distress actions to medical monitoring actions, the two claims are not analogous. One element of an emotional distress action is that the victim have suf *496 fered some injury. Yet, a medical monitoring cause of action, as Plaintiffs present it, would not require an injury be proven.
Id. at 5 (¶ 18) (internal citation omitted). In rejecting medical monitoring as a cause of action, the supreme court explained:
Recognizing a medical monitoring cause of action would be akin to recognizing a cause of action for fear of future illness. Each bases a claim for damages on the possibility of incurring an illness with no present manifest injury. There is no tort cause of action in Mississippi without some identifiable injury, either physical or emotional. Thus, this Court has held that “it is clear that Mississippi does not recognize a cause of action for fear of possibly contracting a disease at some point in the future.” Brewton v. Reichhold Chemicals, Inc., 707 So.2d 618, 620 (Miss.1998) (citing Beech v. Leaf River Forest Prods., Inc., 691 So.2d 446, 451 (Miss.1997); Ferguson, 662 So.2d at 658 (for the same proposition)).
Id. at 5 (¶ 15).
¶ 26. Though Paz I did not consider Pickering, it did extensively discuss Ferguson, relying on it to hold Mississippi requires a plaintiff to prove an injury. And Ferguson holds that to prove the emotional-distress injury of fear of disease, the plaintiff must present substantial proof of exposure. Ferguson, 662 So.2d at 658.[1] Only then may a plaintiff recover for her window of anxiety. See Majca v. Beekil, 183 I11.2d 407, 233 Ill.Dec. 810, 701 N.E.2d 1084,1091 (1998).[2]
¶ 27. Because Lee cannot show substantial evidence of exposure, we must affirm the circuit court’s dismissal of her window-of-anxiety claim.
II. Needle Stick as a Physical Injury
¶ 28. Lee alternatively argues she is entitled to recover for her window of anxiety because she was physically injured by the needle stick. And because part of the protocol following a needle stick is to test for diseases for six months, she claims she should be allowed also to pursue her claim for the emotional distress while awaiting the test results.
¶ 29. But we point out Pickering involved a physical injury as well — a lancet prick. And, as discussed, Pickering allowed potential recovery for the window of anxiety based on the rebuttable presumption that the lancet prick actually exposed *497 Jimmie Pickering to disease. Pickering, 749 So.2d at 102-03 (¶¶ 17-20). Lee does not claim she feared the needle puncture wound itself would become infected or diseased. Instead, she alleges she feared disease was present in the syringe and traveled via the needle into her body through the puncture wound. See Falcon v. Our Lady of the Lake Hosp., Inc., 729 So.2d 1169, 1172 (La.Ct.App.1999) (categorizing needle stick as a “channel of exposure” to HIV). Absent the presence of disease in the syringe, the type of communicable diseases Lee claims she feared could not develop. Under Pickering and Ferguson, without substantial proof of the presence of disease, Lee cannot recover for fear of contracting a disease. Thus, we find Lee’s needle stick, unaccompanied by proof of disease introduced into her body, is not an actual harm for which parasitic emotional-distress damages for fear of disease are available. See Macy’s Cal., Inc. v. Superior Court, 41 Cal.App.4th 744, 48 Cal.Rptr.2d 496, 504 (1995) (“In a routine needle stick, harm, if it occurs, takes place when a hazardous foreign substance, introduced to the body through the needle, causes detrimental change to the body. Only if the plaintiff proves detrimental change to the body may he or she recover parasitic emotional distress damages.”).
¶ 30. We find, however, Lee can potentially recover for her medical expenses. After the needle stick, Lee sought medical treatment. And Lee’s medical expert agreed that Lee’s physician followed medically accepted protocol by testing her for disease contraction for six months following the needle stick. Thus, we reverse the grant of summary judgment solely as to the denial of her claim for medical expenses. On remand, should Lee prevail on the issues of duty, breach, and causation, she is entitled to recover her proven medical expenses related to her treatment.
CONCLUSION
¶ 31. We affirm the grant of summary judgment against Lee’s claim for emotional-distress damages because Lee did not present substantial evidence that her fear of disease was based on actual exposure to a disease. But we reverse the grant of summary judgment against Lee’s claim for medical expenses incurred in testing her for diseases after her puncture wound, allegedly caused by G & K’s negligence, as Lee presented evidence that these expenses resulted from following standard medical protocol after a needle stick.
¶ 32. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND FAIR, JJ., CONCUR. RUSSELL, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RUSSELL, J.

. See also Wilson-Watson v. Dax Arthritis Clinic, Inc., 766 So.2d 1135, 1136 (Fla.Ct.App.2000) (finding “plaintiffs fear of contracting AIDS is unreasonable as a matter of law and not a legally compensable injury ... unless she proves both that the virus was present and that her contact with it was a medically and scientifically accepted channel for the transmission of the disease”); Falcon v. Our Lady of the Lake Hosp., Inc., 729 So.2d 1169, 1172 (La.Ct.App.1999) (holding "when the presence of HIV is not shown (or, at the pleading stage, alleged) ... [fjear in such situations may be genuine but it is based on speculation rather than fact”).

. The Illinois Supreme Court has held:
Once an individual is actually exposed to HIV, a genuine fear of contracting AIDS may exist. The subsequent receipt of HIV-negative test results cannot erase an individual’s genuine fear of contracting AIDS during the period between actual exposure and the eventual receipt of HIV-negative test results more than six months later. In fact, defendants' recitation of the current status of medical research emphasizes that there exists a period of time in which the exposed individual will simply not know what the future may hold. This interim period, sometimes referred to as the "window of anxiety,” is when an individual’s fear of contracting AIDS may be reasonable.
Majca, 233 Ill.Dec. 810, 701 N.E.2d at 1091 (emphasis added).