# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00764-SCT

*HAZEM BARMADA, M.D.*

*v.*

*ARA K. PRIDJIAN, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/05/2007 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WENDY C. HOLLINGSWORTH |
| ATTORNEYS FOR APPELLEE: | GAIL D. NICHOLSON |
| | CHESTER D. NICHOLSON |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 08/14/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Dr. Hazem Barmada appeals to this Court from the grant of summary judgment in favor of the Defendant, Dr. Ara K. Pridjian.  Barmada sued Pridjian for alleged defamation arising out of their working relationship as heart surgeons at Memorial Hospital at Gulfport. Barmada raises the following issues on appeal:

> I.     **Whether the Trial Court Erred in Finding That the Defendant Was Protected by Qualified Privilege.**
>
> II.    **Whether the Trial Court Erred in Finding That There Was No Genuine Issue of Material Fact Regarding Actual Malice, Bad Faith, and/or Abuse of Qualified Privilege.**

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2000, the credentials committee at Memorial Hospital at Gulfport ("Memorial") considered Dr. Hazem Barmada, a cardiothoracic surgeon, for the cardiac surgery program. A member of the committee asked Dr. Ara Pridjian, the medical director of cardiac surgery, to inquire about Barmada's background using sources identified in Barmada's resume. Some responses were critical of Barmada, and that information was reported to the committee. The committee found nothing that impugned Barmada's medical or surgical abilities and accepted him on staff.

¶3.     Thereafter, Barmada became the subject of criticism from doctors and staff at Memorial. The Chief of Cardiovascular Sciences at Memorial, Dr. Milton Concannon, testified by affidavit that Barmada's mortality rate exceeded the threshold set for cardiac surgeons at Memorial. Concannon testified that Barmada's mortality rate coupled with the complaints necessitated an independent review of some of Barmada's cases. The independent review found Barmada's work to be "adequate," although it did confirm the higher mortality rate.

¶4.     In February 2002, Barmada initiated this lawsuit against Pridijian alleging defamation. In May 2002, Pridjian filed his answer and counterclaim.[1]  In October 2006, Pridjian filed a motion for summary judgment. Pridjian filed in support of his motion numerous affidavits

---

[1] On May 30, 2002, Barmada filed a motion to disqualify Pridjian's counsel alleging that he had twice consulted with Pridjian's attorney regarding the matters which were the subject of the instant action. After the circuit court denied the motion, Barmada filed an interlocutory appeal. This Court reversed the circuit court's decision and ordered that Defendant's counsel be disqualified and disgorged of his fees. (Order 103661, May 8, 2003).

as well as depositions of Barmada and himself. In response, Barmada relied on two documents, an affidavit of Nurse David Kutlina and Dr. Paul Robinson's independent review.

¶5. The circuit court noted Kutlina's testimony that Pridjian made "generally slanderous comments about [Barmada] *in front of the heart team* at memorial." (Emphasis in original). The circuit court ruled that Dr. Robinson's review "has no legal effect since Dr. Robinson was neither deposed nor did he submit an affidavit containing the information relied upon by the Plaintiff." The trial court granted Pridjian's motion for summary judgment, finding that a qualified privilege applied and that there was no evidence before the court of malice. Aggrieved by the trial court's judgment, Barmada filed this appeal.

### LEGAL ANALYSIS

¶6. A de novo standard is applied when reviewing a trial court's grant of summary judgment. *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000). Under Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The party seeking summary judgment bears the burden of proving there is no genuine issue of material fact. *Miller,* 762 So. 2d at 304. The court must review all evidence in a light most favorable to the party against whom the motion for summary judgment is made. *Id.*

¶7. The tort of defaming a person's character or reputation through the spoken word is actionable under the common law doctrine of slander. *Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001). "Defamation is that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to

3

excite adverse, derogatory or unpleasant feelings or opinions against him." **Id.** (internal quotations omitted)

## I. Whether the Trial Court Erred in Finding That the Defendant Was Protected by Qualified Privilege.

¶8. Barmada argues that summary judgment granted in favor of Pridjian was not proper because statements made by Pridjian are not protected by a qualified privilege. Pridjian argues that summary judgment was proper because he is immune from liability for slander based on qualified privilege.

¶9. When analyzing defamation claims, Mississippi courts employ a bifurcated process. *Eckman v. Cooper Tire & Rubber Co.*, 893 So. 2d 1049, 1052 (Miss. 2005). First, the Court must determine whether the occasion calls for a qualified privilege. **Id.** If a qualified privilege does exist, the Court must then determine whether the privilege is overcome by malice, bad faith, or abuse. **Id.** This Court has defined qualified privilege as "[a] communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous . . . . " **Id.** This Court has recognized that a privilege exists with regard to communications between employers and employees. *Young v. Jackson*, 572 So. 2d 378, 383 (Miss. 1990).

¶10. Kutlina testified by affidavit that Dr. Pridjian had made defamatory statements to the heart team while performing surgeries. Dr. Pridjian testified in his deposition that he had discussed Barmada's competency with other physicians and staff at Memorial and with an

4

independent reviewer. The following exchange took place during Pridjian's deposition regarding conversations with physicians who were not on staff at Memorial:

Q: What did you tell them about Dr. Barmada?

A: They told me. They told me things that they had heard.

Q: Such as what?

A: That he was a surgeon who needed help as you alluded to in the letter.

Q: Anything else?

A: No.

Q: Did you sit silently and listen, or did you share with them your opinions regarding Dr. Barmada?

**A: I'm under oath. I've got to tell you I don't remember.**

(Emphasis added). If these people shared a direct interest in Barmada's competency, then qualified immunity applies.

¶11. In *Hayden v. Foryt*, a supervising doctor discussed charges of incompetency against a fellow doctor at various meetings with administrators and also at a surgical staff meeting, "attended by all members of the hospital medical surgical staff, except for one physician on leave." *Hayden v. Foryt*, 407 So. 2d 535, 537 (Miss. 1981). This Court held that "the persons present in those meetings were directly interested in the matter and that the qualified privilege prevailed . . . ." *Id.* at 538. The hospital in *Hayden* also employed an independent review of some of the physician's cases by a visiting doctor. *Id.* The supervising doctor expressed his concerns in the incompetency of the doctor with the reviewing physician. *Id.* This Court found that these communications were protected by the qualified privilege. *Id.*

5

¶12. In the present case, the only evidence presented shows that Pridjian made statements to Memorial administrators, doctors, the surgical staff, and an independent reviewer. Based on *Hayden*, these individuals were directly interested in the matter; and therefore, the qualified privilege applies. *See Hayden*, 407 So. 2d at 537-38.

¶13. In *Young*, an invasion-of-privacy case, two of Young's coworkers, Smith and Wilson, communicated to other coworkers that Young's recent collapse and hospitalization were not due to radiation exposure at their work place but were not related to an earlier hysterectomy. *Young*, 572 So. 2d at 378. There was concern among employees that Young's problems were related to radiation exposure and that they themselves might be in danger. *Id.* This Court held that the mere fact that the persons were coworkers did not in and of itself establish a qualified privilege. *Id.* at 384. The occasion must be one which gives rise to the defense. *Id.* In *Young*, the occasion for qualified immunity arose because the parties shared a direct interest in their personal safety. *Id.*

¶14. We find in the present case, Pridjian, the heart team and the medical personnel shared a direct interest in Barmada's competency.

¶15. The one concern of this Court is Pridjian's "I don't remember" statement. When asked if he had talked about Barmada's competency with physicians not employed at Memorial he replied, "I'm under oath. I've got to tell you I don't remember." The statements to physicians not employed at Memorial would not be protected under either of the interests found above. Obviously, they would not share the direct interest in protecting the interests of a common employer, and secondly, it would stretch an interest in protecting patients too broadly to allow it to apply to the entire coastal area. We find Pridjian's

6

statement troubling because one reading of it suggests that he was not being honest. However, Barmada did not offer any evidence that Pridjian had made defamatory statements to anyone outside the employment of Memorial. Therefore, we find that qualified immunity applies in this case.

## II. Whether the Trial Court Erred in Finding That There Was No Genuine Issue of Material Fact Regarding Actual Malice, Bad Faith, and/or Abuse of Qualified Privilege.

¶16. Barmada further seeks to reverse the summary judgment by claiming malice, bad faith, and/or abuse of the privilege by Pridjian. Pridjian argues that summary judgment was appropriate because Barmada failed to provide any evidence of malice, and thus he failed to overcome the presumption of good faith.

¶17. "If a qualified privilege does exist, the Court must then determine whether the privilege is overcome by malice, bad faith, or abuse." *Eckman v. Cooper Tire & Rubber Co.*, 893 So. 2d 1049, 1052 (Miss. 2005). Where qualified privilege exists, a presumption of good faith arises. *Hayden v. Foryt*, 407 So. 2d 535, 539 (Miss. 1981). "A jury does not decide whether a defendant acted with actual malice unless a genuine issue of material fact exists." *Eckman*, 893 So. 2d at 1054. A plaintiff must present affirmative evidence demonstrating actual malice to defeat the qualified privilege. *Id.* "Actual or express malice, as distinguished from malice in law, in its ordinary sense denotes ill will, a sentiment of hate or spite, especially when harbored by one person towards another, exists when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by ill will in what he does and says, with the design to willfully or wantonly injure another." *Young v. Jackson*, 572 So. 2d 378, 385 (Miss. 1990).

¶18. Barmada makes numerous allegations of malice and bad faith, but we rely only on those that are supported by evidence in the record. First, in his deposition, Barmada testified that Pridjian was behind a phone call made to one of his surgical patients' room on the eve of surgery telling them to switch to another surgeon because Barmada was a bad surgeon. Barmada does not support this allegation with any actual proof that Pridjian had anything to do with this call. While Pridjian acknowledged that the call was made, he testified that he had nothing to do with it. Barmada has presented no evidence of malice or bad faith by Pridjian in reference to the phone call.

¶19. Second, Barmada asserts that Pridjian unsuccessfully tried to stop another physician from assisting him in a surgery. However, Barmada admits to his lack of first-hand knowledge of the events. The assisting physician's affidavit was the only competent evidence before the trial court. He recounted the events as follows: "Prior to the time that I made it into the operating room, I was confronted by Dr. Ara K. Pridjian, M.D., who felt obligated to warn me about assisting Dr. Barmada. Dr. Pridjian told me that Dr. Barmada had cases under investigation and his clinical competence was in question." In light of the assisting physician's testimony, we find that Barmada has presented no evidence of malice or bad faith by Pridjian with respect to this incident.

¶20. Finally, Barmada makes countless assertions that Pridjian's harsh comments to Memorial staff were malicious. Barmada contends that Kutlina's affidavit provides affirmative evidence of this malicious ploy. The trial court ruled that "Nurse Kutlina references no specific conversation by substance, date or witnesses thereto. Thus, it is so vague and generalized as to be of no evidentiary value for purposes of determining malice."

8

While we disagree with the trial court's conclusion that Nurse Kutlina's affidavit was too vague and generalized to be of evidentiary value, we agree that it fails to provide a basis for Barmada's claim that Pridjian's conduct exceeded the scope of qualified immunity.

¶21.    In *Hayden*, this Court considered whether a supervising doctor's criticism of a fellow doctor as incompetent was malicious. *Hayden*, 407 So. 2d 535. "If the defendant honestly believed the plaintiff's conduct to be such as he described it, the mere fact that he used strong words in describing it is no evidence of malice. The fact that the expressions are angry and intemperate is not enough; the proof must go further and show that they are malicious." *Id.* at 539. The Court found that the proof provided did not show malicious conduct by the supervising doctor. The Court stated that when personal differences between doctors affect the hospital, "discipline must be administered by those people in authority whose responsibility and allegiance are to the institution." *Id.*

¶22.    In *Benson*, the appellant argued that letters criticizing her competency as a secretary were malicious as they were designed to injure her professional reputation. *Benson v. Hall*, 339 So. 2d 570 (Miss. 1976). The letters stated that "[Benson] is most disrespectful . . . she cannot follow simple directions unless they are written . . . [and] unless there is some place where she can work where she has nothing to do but make copies of something already done, she will not be of any use in any office on campus." *Id.* at 572. In *Benson*, this Court affirmed the trial court's dismissal of Benson's suit on a demurrer because Benson provided the court with mere conclusions of malice but failed to provide any facts which would constitute malice. *Id.* at 573.

¶23. In *Eckman*, Eckman argued that a medical review of his competency included malicious statements. *Eckman*, 893 So. 2d 1049. These comments included "[i]t is embarrassing to me that there are people in my profession which would resort to tactics like these and give the entire profession a bad name. To me, this borders on white collar crime." *Id.* at 1052. This Court, echoing its sentiments in *Hayden*, held that "[i]f the defendant honestly believed the plaintiff's conduct to be such as he described it, the mere fact that he used strong words in describing it is no evidence of malice." *Eckman*, 893 So. 2d at 1053 (citing *Hayden*, 407 So. 2d at 539). "The fact that the expressions are angry and intemperate is not enough; the proof must go further and show that they are malicious." *Eckman*, 893 So. 2d. at 1053 (citing *Hayden*, 407 So. 2d. at 539.) This Court affirmed the grant of summary judgment finding that while some of the statements may have been characterized as intemperate, Eckman failed to create a genuine issue of material fact regarding malice.

¶24. In the present, case Barmada did not produce affirmative evidence of malice to overcome the presumption of good faith; and therefore, summary judgment was appropriate. The only evidence offered by Barmada was Kutlina's affidavit which, under *Hayden*, *Benson*, and *Eckman*, does not present evidence that Pridjian's conduct rose to the level of malicious. Furthermore, the alleged statements of Pridjian are similar to the statements in *Benson* and *Eckman*. In both of those cases this Court held that the mere harshness of the statements did not constitute malice.

## CONCLUSION

¶25. For the reasons stated above, we affirm the trial court's grant of summary judgment.

¶26. **AFFIRMED**.

10

**WALLER AND DIAZ, P.JJ., CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. GRAVES AND RANDOLPH, JJ., CONCUR IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**