# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00603-COA

| | |
|---|---|
| SOUTHERN HEALTH CORPORATION OF HOUSTON, D/B/A TRACE REGIONAL HOSPITAL AND DR. VICTOR HORN | APPELLANTS |

v.

| | |
|---|---|
| CAROL CRAUSBY | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2014 |
| TRIAL JUDGE: | HON. JOHN ANDREW GREGORY |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN P. FOX |
| | LUTHER C. FISHER IV |
| | ELIZABETH FOX AUSBERN |
| ATTORNEY FOR APPELLEE: | RONALD W. LEWIS |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | JURY VERDICT OF $80,000 FOR CIVIL CONSPIRACY |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND RENDERED IN PART: 05/26/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1. Carol Crausby worked as an emergency room nurse at Trace Regional Hospital in Houston, Mississippi – until Dr. Victor Horn demanded that she be fired, and the hospital agreed. A jury awarded Crausby $80,000 from the hospital on her claim that its administrators had conspired with Dr. Horn to tortiously interfere with her employment relationship . . . with the hospital. Although we find a challenge to the legal theory waived,

we reverse and render the award because acquiescing to Dr. Horn's demands did not amount to a conspiracy to tortiously interfere with Crausby's employment.

**FACTS**

¶2. In early 2001, Crausby was the managing supervisor of the emergency room at Trace Regional Hospital in Houston, Mississippi. She had held that position for a few years. Crausby was a "working" nurse manager who both supervised the emergency room and tended to patients. She seems to have been regarded as highly competent but occasionally abrasive with some of her coworkers, especially when she felt someone was imposing on her or her department. Dr. Horn was the chief of staff – not an employee of the hospital, but a liaison with the hospital administration chosen by the physicians who practiced at the hospital. At the time Dr. Horn had been a physician in Houston for about twenty years.

¶3. Dr. Horn was only occasionally present in the emergency room, but he alleged a series of incidents with Crausby that led him to demand that she be fired.[1] Dr. Horn claimed that, about a year prior, he had heard Crausby say "Abby has left the building" after a patient died.[2] He alleged that on another occasion, Crausby had refused to contact another doctor to get dosage history for a patient. At trial, Dr. Horn alleged (for the first time, Crausby argued) that she had vocally objected to administering an antibiotic to a different patient, in the patient's presence. Various other incidents were noted that were not connected with Dr.

---

[1] According to Dr. Horn, he relented a short time later and just asked not to have to work with her.

[2] A fictitious name has been substituted to protect the confidentiality of the patient.

2

Horn – Crausby's reluctance to be on call; her delays in preparing for a certification; comments from another employee regarding difficulty dealing with her; a dispute with another physician (Dr. Horn's brother) over the temperature in the emergency room.

¶4. After Dr. Horn brought his complaint to the hospital administrators, they arranged a meeting between Crausby, Dr. Horn, the hospital CEO, a nurse who was Crausby's direct superior, and the human resources manager. During the meeting, as Dr. Horn was recounting his allegations, Crausby disputed that she had made the comment about the patient "leaving the building." Dr. Horn became angry, threatened either to withdraw his "support" from the hospital or withdraw his patients (depending on whose account is accepted), and left, throwing a telephone on his way out.

¶5. Later, the hospital presented Crausby with an "improvement plan" which she was expected to sign. The first iteration contained various statements that Crausby felt unfairly blamed her or called her professionalism into question. Following either her refusal or reluctance (depending on the account) to accept the plan or some revised version of it, and her refusal to accept demotion to a nonsupervisory position, Crausby was either fired or quit, again depending on the account.

¶6. Crausby testified that the false allegations and mistreatment she suffered at the hands of Dr. Horn and the hospital administration caused her an immense amount of stress. She noted that she had to seek treatment for anxiety and related physical ailments while these events were unfolding, and she claimed that it had caused her to lose the confidence she

needed to continue performing at a high level in her field.

¶7.    Crausby's suit named four defendants – Dr. Horn, the hospital, the hospital's CEO, and the HR manager.  The complaint alleged various causes of action, many of which were rejected by the jury.  The jury found for Crausby on two claims: that Dr. Horn had slandered her; and that the hospital was vicariously liable for a conspiracy between its CEO, the HR manager, and Dr. Horn to interfere with Crausby's employment.  The jury awarded $80,000 in damages against the hospital, but $0 against Dr. Horn.  The hospital and Dr. Horn have appealed; Crausby has not cross-appealed.

## DISCUSSION

### 1. Conspiracy to Tortiously Interfere with Contract

¶8.    As an at-will employee, Crausby could not sue the hospital directly for wrongful termination except under very limited circumstances.  *See Jones v. Fluor Daniel Servs. Corp.*, 959 So. 2d 1044, 1046-47 (¶10) (Miss. 2007).  She instead pursued the hospital on the theory that it was vicariously liable for the actions of its administrators in interfering with her employment.

¶9.    "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him." *Levens v. Campbell*, 733 So. 2d 753, 760 (¶25) (Miss. 1999) (quoting Restatement (Second) of Torts § 766A (1979)).  This includes

4

contracts of at-will employment. *Id.* at (¶27).

¶10. Curiously, the jury found against Crausby on her claims of tortious interference by Dr. Horn and on her conspiracy claims against the individuals, but for her on the vicarious liability of the hospital. To the extent that this verdict was contradictory, that is not an issue. *See D.W. Boutwell Butane Co. v. Smith*, 244 So. 2d 11, 12 (Miss. 1971) ("Where the employee is exonerated and the master held liable, the case will not be reversed for that reason alone.").

¶11. On appeal, the hospital contends that it cannot be held liable for interfering with its own contract because tortious interference can occur only when the contract is "between another and a third person." *Levens*, 733 So. 2d at 760 (¶25). The hospital concedes, however, that the issue of legal sufficiency can only be addressed by way of plain error, as this argument was not presented to the trial court, and the instructions that allowed the jury to find the hospital liable were either agreed or submitted by the defendants themselves. This Court "will generally only exercise our discretion to review and correct a clear or obvious error if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Grindle v. State*, 134 So. 3d 330, 338 (¶22) (Miss. Ct. App. 2013) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)) (internal quotation marks omitted).

¶12. We decline to address this argument. As to whether the error is plain, it is true that Mississippi law does not allow an entity to be sued for interfering with its own contract. But at least one court applying the same rule has held that a cause of action exists for conspiracy

5

to do so with a third party. *Blivas & Page Inc. v. Klein*, 282 N.E.2d 210, 214 (Ill. App. Ct. 1972) ("While it is true that a party cannot be sued in tort for inducing the breach of his own contract, he can be sued for conspiracy with a third person who has induced him to breach his contract resulting in actual damage."). Furthermore, any error on this point was invited because the legal theory the hospital now challenges was presented to the jury by agreement; in fact, the vicarious liability instruction was submitted by the defendants. The defendants also submitted the form of the verdict instruction, which also allowed the jury to find the hospital vicariously liable. Since the hospital submitted these instructions, "any error . . . is of [its] own making." *Ill. Cent. R.R. v. Young*, 120 So. 3d 992, 1004 (¶29) (Miss. Ct. App. 2012). The issue is waived for consideration on appeal. *Id.*

¶13.    We conclude that any error in allowing the hospital to be found vicariously liable was invited, and we decline to address this issue as plain error.

¶14.    On the other hand, the issue of the sufficiency of the evidence supporting the verdict remains squarely before us. Crausby alleges that the proof showed that the hospital administrators knew that Dr. Horn's complaints did not warrant firing her under their own standards, but they cynically decided Dr. Horn was worth more to the hospital than Crausby, so they forced her out to placate him. Granted, the evidence was sufficient to prove that; but even if we accept Crausby's theory of the case, at best it shows acquiescence to Dr. Horn's demands. Was this an agreement to tortiously interfere with her employment?

¶15.    We conclude that it was not. A civil conspiracy requires a "meeting of the minds on

6

the object or course of action." *Braddock Law Firm PLLC v. Becnel*, 139 So. 3d 722, 726 (¶18) (Miss. Ct. App. 2013). There must not only be an agreement, but an agreement "to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully." *Gallagher Bassett Servs. Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (¶37) (Miss. 2004). Acquiescing to Dr. Horn's demand that Crausby be fired does not constitute an agreement to tortiously interfere with her employment; tortious interference requires that the acts be done "with the unlawful purpose of causing damage and loss, without right or justifiable cause." *Collins v. Collins*, 625 So. 2d 786, 790 (Miss. 1993). However cynical it might be, agreeing to fire Crausby for the hospital's economic advantage does not satisfy that element of tortious interference.

¶16. We conclude that the evidence failed to support the jury verdict, and so we reverse and render the award of damages for conspiracy.

## 2. Slander Per Se

¶17. Finally, Dr. Horn challenges the jury's finding that he slandered Crausby by making various false allegations about her. He contends that the jury verdict was against the overwhelming weight of the evidence. In reviewing this challenge, this Court asks whether the trial court abused its discretion in denying the motion for a new trial. *Bobby Kitchens Inc. v. Miss. Ins. Guar. Ass'n*, 560 So. 2d 129, 132 (Miss. 1989). We view all the evidence in the light most consistent with the jury verdict. *Motorola Commc'ns & Elecs. Inc. v. Wilkerson*, 555 So. 2d 713, 723 (Miss. 1989).

¶18. Crausby's proof at trial showed that Dr. Horn falsely accused her of making an

unprofessional remark following the death of a patient and of refusing to follow his instruction to get the dosage history of a patient. Dr. Horn accepts that the jury, as the finder of fact, was entitled to find that his statements were false; but he argues that the statements were protected by a qualified privilege because of the context in which they were made – i.e., regarding the functioning of the emergency room where Dr. Horn sometimes practiced. Dr. Horn argues that the overwhelming weight of the evidence showed that the comments were made for the betterment of the hospital and were said out of a good faith, if mistaken, belief in their truthfulness.

¶19.    In *Barmada v. Pridjian*, 989 So. 2d 359, 362 (¶9) (Miss. 2008) (citations and quotation marks omitted), the Mississippi Supreme Court laid out the law regarding qualified privilege:

> When analyzing defamation claims, Mississippi courts employ a bifurcated process. First, the Court must determine whether the occasion calls for a qualified privilege. If a qualified privilege does exist, the Court must then determine whether the privilege is overcome by malice, bad faith, or abuse. This Court has defined qualified privilege as a communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous . . . .

We agree that the statements, made by a doctor practicing in the emergency room, about an emergency room nurse, directed only to the administrators of the hospital, were subject to the qualified privilege. But there is still the question of whether the privilege was overcome by malice, bad faith, or abuse.

8

¶20.    Statements subject to the qualified privilege are presumed to have been made in good faith. *Id.* at 364 (¶17). To overcome the presumption, the statements must have been made with actual malice. *Id.* Actual malice means that "at the time the comments were published, the speaker either knew them to be false or made them in reckless disregard of their truth." *Smith v. White*, 799 So. 2d 83, 87 (¶9) (Miss. 2001).

¶21.    In both cases, Dr. Horn claimed to have personally witnessed Crausby say or do something that she testified unequivocally did not happen. The jury was entitled to believe Crausby – "[w]hen evidence is conflicting, we defer to the jury's determination of the credibility of witnesses and the weight of their testimony." *Banks ex rel. Banks v. Sherwin-Williams Co.*, 134 So. 3d 706, 711 (¶13) (Miss. 2014).

¶22.    Dr. Horn hangs his hat on Crausby's admission, from the stand as she was being cross-examined, that Dr. Horn may have sincerely but erroneously believed she had refused his instructions to administer a drug. The sincerity of Dr. Horn's belief, however, is not the issue; one can honestly believe something and still say it in reckless disregard of its truth or falsity. Dr. Horn also claims that Crausby admitted the same about his other claims, but the record does not bear that out.[3]

¶23.    Dr. Horn next relies on the occasional statement in Mississippi caselaw that actual

---

[3] The particular question Crausby answered in the affirmative was compound: "And these other complaints, I know you explained that you completely disagreed with his version of events. I understand that; but do you understand that for whatever reason, rightly or wrongly, that was his perception; that he felt disrespected?"

malice "denotes ill will, a sentiment of hate or spite, especially when harbored by one person towards another, exists when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by ill will in what he does and says, with the design to willfully or wantonly injure another." *Barmada*, 989 So. 2d at 364 (¶17) (citation omitted). Dr. Horn argues that, if he held a sincere desire to protect his patients and ensure that the emergency room functioned smoothly, which no one denies; and if he believed removing Crausby would further those goals, he cannot be found to have made the statements with the requisite ill will. We disagree – Dr. Horn could have held both motives simultaneously, and there was more than sufficient evidence for a jury to have found that he was motivated by ill will toward Crausby. It is true that the fact that Dr. Horn was angry and intemperate, even enraged, while demanding that Crausby be fired may not be enough to find malice, in and of itself. *Barmada*, 989 So. 2d at 365 (¶21). But when paired with the fact that Dr. Horn claimed to have personally witnessed things that did not happen, it was sufficient for the jury to infer malice. "[I]ntent, being a state of mind, is rarely susceptible of direct proof, but ordinarily must be inferred from the acts and conduct of the party and the facts and circumstances attending them." *Jones v. State*, 920 So. 2d 465, 472 (¶17) (Miss. 2006).

¶24. Having reviewed the record, we conclude that the jury's finding that Dr. Horn had committed slander per se is not against the overwhelming weight of the evidence.

¶25. **THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL**

10

**COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT, DR. VICTOR HORN, AND THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**